Jeffrey F. SPRANGERS, Plaintiff-Respondent-Petitioner,

v.

GREATWAY INSURANCE COMPANY and Todd J. Zielke,
Defendants,

THRESHERMEN'S MUTUAL INSURANCE COMPANY,
Defendant-Petitioner,

LEARMAN-SCHALLER POST 2732, V.F.W. Clubhouse,
Defendant and Third-Party Plaintiff-Respondent-Petitioner,

v.

THE DIEDRICH AGENCY, INC. Third-Party Defendant-Petitioner,

ABC INSURANCE COMPANY, Curt McSweyn, Vikki
McSweyn and DEF Insurance Company, Third-Party
Defendants.

Susan A. YOUNG, Individually and as Personal
Representative for the Estate of Martin J. Young,
Plaintiff-Respondent-Petitioner,

v.

GREATWAY INSURANCE COMPANY and Todd J. Zielke,
Defendants,

THRESHERMEN'S MUTUAL INSURANCE COMPANY,
Defendant-Appellant,

*See Callaghan's Wisconsin Digest, same topic and section number.

LEARMAN-SCHALLER POST 2732, V.F.W. Clubhouse, Defendant Third-Party Plaintiff-Respondent-Petitioner,

v.

THE DIEDRICH AGENCY, INC., Third-Party Defendant-Petitioner,

ABC INSURANCE COMPANY, Curt McSweyn, Vikki McSweyn and DEF Insurance Company, Third-Party Defendants.

Supreme Court

*No. 92–1617. Oral argument February 2, 1994.—Decided April 18, 1994.*

(Also reported in 514 N.W.2d 1.)

For the plaintiff-respondent-petitioner there were briefs by *Michael S. Siddall* and *Herrling, Clark, Hartzheim & Siddall, Ltd.,* Appleton, and oral argument by *Michael S. Siddall.*

For the defendant and third-party-plaintiff-respondent-petitioner there were briefs by *Steven L. Toney* and *Law Office of Steven L. Toney,* New London and oral argument by *Steven L. Toney.*

For the defendant-appellant there was a brief by *James W. Mohr, Jr., Gregory L. Knapp* and *Mohr,*

526

*Anderson & McClurg, S.C.,* Hartford and oral argument by *James W. Mohr, Jr.*

Amicus curiae brief was filed by *Randy S. Parlee, Frederick J. Smith* and *Peterson, Johnson & Murray, S.C.* for The Civil Trial Counsel of Wisconsin.

SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals, *Sprangers v. Greatway Ins. Co.,* 175 Wis. 2d 60, 498 N.W.2d 858 (Ct. App. 1993), reversing an order of the circuit court for Waupaca County, Philip M. Kirk, Circuit Judge. The circuit court refused to grant summary judgment in favor of the defendant Threshermen's Mutual Insurance Company against Learman-Schaller Post 2732, VFW Clubhouse, and the plaintiffs Jeffrey Sprangers and Estate of Martin J. Young. The court of appeals gave Threshermen's leave to appeal the non-final order and reversed the order of the circuit court. We affirm the decision of the court of appeals.

Two issues are presented. The first is whether, under the terms of its liability insurance policy, the VFW is in the business of selling or serving alcoholic beverages and therefore excluded from coverage for liability resulting from its sale of alcoholic beverages to an underaged drinker. The second issue is whether the policy exclusion for insureds "in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages" is unenforceable either on the grounds of public policy or equitable estoppel, or because Threshermen's failed to point out the exclusion to the VFW.

We conclude that a reasonable insured in the position of the VFW would have understood that the VFW was "in the business of sell-

ing. . .[and]. . .serving. . .alcoholic beverages," as that phrase is used in the policy. Therefore we conclude that the VFW was excluded from coverage under the insurance policy for liability arising from the sale of alcoholic beverages to an underaged person. We also conclude, contrary to the arguments of the VFW, that the exclusion is enforceable. It is not against public policy; Threshermen's is not equitably estopped. Finally we conclude that, under the circumstances the VFW sets forth, Threshermen's has no duty to anticipate which liabilities the VFW may expect a policy to cover or to identify which exclusions in a policy the VFW may deem important. Accordingly we affirm the decision of the court of appeals in favor of Threshermen's and against the VFW and the injured plaintiffs.

## I.

For the purposes of this review, the facts are undisputed. Jeffrey F. Sprangers and Martin J. Young were riding their motorcycles eastbound on State Highway 54 in the Town of New London, Waupaca County. A westbound pickup truck operated by the defendant, 20 year old Todd Zielke, crossed the centerline and struck both motorcycles. Sprangers was severely injured and Young was killed.

Zielke had been drinking that night at the VFW and was under the influence of intoxicants at the time of the accident. The accident victims, plaintiffs Jeffrey F. Sprangers and Martin Young (through Susan A. Young, individually and on behalf of the Estate of Martin Young), commenced separate actions against Zielke, the VFW, and Threshermen's, alleging that the VFW had negligently served alcohol to Zielke, an underaged drinker, and that this negligence was a sub-

stantial factor in causing the plaintiffs' injuries. The two actions were later consolidated.

The plaintiffs sought damages for personal injury and wrongful death against Zielke and the VFW and joined Threshermen's to the action. In its cross-claims against Threshermen's, VFW sought a declaratory judgment concerning whether the liquor liability exclusion applied to the plaintiffs' claims.

The VFW is incorporated under sec. 188.11, Stats. 1991–92. It is a non-profit entity under sec. 501(c)(19) of the Internal Revenue Code for federal tax purposes. The VFW engages in a number of social, civic, and charitable activities in the community. It also operates a "canteen" or bar open to the public on Thursdays, Fridays, and most Saturdays from 2:00 or 3:00 p.m. to 2:00 a.m. At the time of the accident, the VFW employed eight people in the bar including six bartenders. The bar generated $72,301 in revenues in 1990; its revenues exceeded expenses in some years but not in others. Excess revenues from the bar are used to support the activities of the VFW. A more extensive description of the activities of the VFW relating to the sale of alcoholic beverages is set forth later in the opinion.

The policy Threshermen's issued to the VFW has two types of coverages. One, entitled "Business Special Property Coverage Form," comprises 16 printed pages; the other, entitled "Businessowners Liability Coverage Form," is 10 pages.[1] The Diedrich Agency, Inc., was the independent insurance agency involved in the sale of the policy.

---

[1] The total policy consists of 39 pages. In addition to these two coverage forms, the policy includes a renewal certificate and schedules (4 pages), endorsements (7 pages), and businessowners common policy conditions (2 pages).

The policy's Businessowners Liability Coverage Form is of concern in the instant case. It contains an exclusion relating to liability arising from alcoholic beverages which reads as follows:

EXCLUSIONS

. . .This insurance does not apply to:

. . .

c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are *in the business of* manufacturing, distributing, selling, serving or furnishing alcoholic beverages. (Emphasis added.)

Threshermen's moved for summary judgment, asserting that the VFW's liability policy expressly excluded coverage for an insured like the VFW who was in the business of selling or serving alcoholic beverages and sold or served alcoholic beverages to an underaged person. The circuit court denied the motion stating that a better record was needed regarding the VFW's operation of the bar to determine whether the policy exclusion applied.

530

■ When reviewing the grant of a summary judgment motion, this court applies the standards set forth in sec. 802.08., Stats. 1991–92, in the same way as the circuit court applies them. *Voss v. Middleton,* 162 Wis. 2d 737, 470 N.W.2d 625 (1991).

## II.

The first question on summary judgment is whether as a matter of law Threshermen's has stated a valid defense that the policy excludes coverage for the VFW under the undisputed facts of the case. The policy excludes coverage for an insured "in the business. . .of manufacturing, distributing, selling, serving or furnishing alcoholic beverages." According to one state court, this exception is " 'more or less standard language in tavern and saloon general liability policies' "[2]

[2] *Laconia Rod & Gun Club v. Hartford Acc. & Indem. Co.,* 459 A.2d 249, 251 (N.H. 1984), quoting *New Hampshire Ins. Co. v. Hillwinds Inn, Inc.,* 117 N.H. 350, 351–52, 373 A.2d 354, 355 (1977).

Numerous cases in other jurisdictions have held that for-profit bars and taverns fall within the business of selling liquor exclusion. *See, e.g., Lampliter Dinner Theater, Inc. v. Liberty Mutual Ins. Co.,* 792 F.2d 1036 (11th Cir. 1986); *Gomez v. Hartford Company of the Midwest,* 803 S.W.2d 438 (Tex. App. 1991); *United States Fidelity & Guaranty v. Griggs,* 491 A.2d 267 (Pa. Super. 1985).

The depositions presented in this case, without challenge by the VFW, support the contentions that this exception is standard language in tavern and saloon general liability policies; that liability coverage for those in the business of selling alcoholic beverages is unavailable in standard insurance contracts; that such coverages must be obtained at great expense through the secondary insurance market; and that establishments selling alcoholic beverages rarely purchase such coverage.

We must determine whether the VFW, a non-profit fraternal society, is "in the business of. . .selling [and] serving. . .alcoholic beverages" within the meaning of the policy exclusion.

In the absence of extrinsic evidence, interpretation of an insurance policy is a matter of law which this court decides independently of other courts that may have examined the policy. *Shorewood School District v. Wausau Ins.,* 168 Wis. 2d 390, 407–08, 484 N.W.2d 314 (1992); *Employers Health Insurance v. General Casualty Co.,* 161 Wis. 2d 937, 945–46, 469 N.W.2d 172 (1991).

The plaintiffs assert that the exclusion is unambiguous and does not apply because the VFW is a non-profit organization or that alternatively the exclusion is ambiguous and should be construed strictly against Threshermen's and in favor the VFW. The VFW argues that the exclusion is ambiguous.

A.

While the interpretation of the policy exclusion regarding its application to a non-profit fraternal organization is a question of first impression in Wisconsin, a number of courts in other jurisdictions have interpreted nearly identical exclusions in liability policies in fact situations substantially similar to the instant case. To support their position, the plaintiffs and the VFW rely on two New Hampshire cases, *Laconia Rod & Gun Club v. Hartford Acc. & Indem. Co.,* 459 A.2d 249 (N.H. 1984), and *American Legion Post No. 49 v. Jefferson Ins. Co.,* 485 A.2d 293 (N.H. 1984), and a

Massachusetts decision, *Newell-Blais Post No. 443 v. Shelby Mut. Ins. Co.,* 487 N.E.2d 1371 (Mass. 1986).[3]

In *Laconia,* the New Hampshire Supreme Court ruled that the plaintiff, a non-profit sportsmen's club, was not engaged "in the business of selling or serving alcohol" and therefore was not within the policy exclusion. The court, relying on Corpus Juris Secundum, recognized that the word "business" could be interpreted either as any regular activity that occupies one's time and attention or as an activity with a direct profit motive, and therefore concluded that the word business is ambiguous. Adopting the second, more narrow definition, the court ruled that the exclusion did not apply to the club because it lacked a direct profit motive. *American Legion,* the second New Hampshire case, was, according to the court, controlled by *Laconia.* In *American Legion* the court added, without explanation, that the policy exclusion depends on the character of the organization, not the profitability of the liquor sales.

In *Newell-Blais Post No. 443 v. Shelby Mutual Insurance,* 487 N.E.2d. 1371 (Mass. 1986), the Massachusetts Supreme Judicial Court was called upon to determine the meaning of the policy exclusion "engaged in the business of. . .selling. . .alcoholic bever-

---

[3] The VFW and the plaintiff also cite a federal district court decision, *Zurich Ins. Co. v. Uptowner Inns, Inc.,* 740 F. Supp. 404 (S.D. W.Va. 1990), aff'd without published opinion, 904 F.2d 702 (4th Cir. 1990). In that case the insurance policy was issued to an operator of a hotel which included a tavern. Although the court rested its decision in favor of the insurance company on another provision of the policy, it indicated that the policy exclusion for an insured engaged in the business of selling alcoholic beverages refers to an entity engaged in the sale of alcoholic beverages for profit.

ages." Without careful analysis, the court concluded that the term "business" should be given its ordinary and usual meaning which is, according to a dictionary, a "usually commercial or mercantile activity customarily engaged in as a means of livelihood." Thus, the court concluded, the common meaning of the word "business" necessarily includes a purpose of gain or profit. Because the post was a non-profit veterans organization, it could not be considered to be engaged in the business of selling or serving alcohol.

After the New Hampshire and Massachusetts cases were decided, courts in South Dakota, Washington, Louisiana, and the United States Tenth Circuit Court of Appeals, reviewing substantially similar policy language in cases involving non-profit entities, have characterized the words "in the business of" as unambiguously referring to organizations with fraternal or non-profit purposes. These courts have concluded that the policy exclusion describes the *activities* of an organization rather than its corporate purpose or character.

In *McGriff v. U.S. Fire Ins. Co.,* 436 N.W.2d 859 (S.D. 1989), involving an Eagles club, the South Dakota Supreme Court held that the exclusion applied. The court specifically rejected the reasoning of the New Hampshire and Massachusetts cases. Although Black's Law Dictionary and Webster's offer various definitions of "business," the court reasoned that "business" generally refers to "a commercial enterprise or activity and the language of the exclusion "could not be more clear." 436 N.W.2d at 862. The court further concluded that the club's bar realized a substantial profit each year and was the Eagles' largest revenue source. Furthermore, the Eagles had a liquor license, nonmembers were allowed on the premises, and the club paid state

sales tax on its bar operations. Regardless of how the bar's profits were eventually used, the bar itself was in the business of selling and serving alcohol, the court said, and "anyone reading the policy, using the normal vernacular, would understand what it meant." 436 N.W.2d at 863.

The Washington court of appeals in *Fraternal Order of the Eagles v. General Accident Ins. Co.,* 792 P.2d 178 (Wash.App. 1990), adopted the South Dakota Court's approach of focusing on the activities, rather than the corporate structure of the insured. The court held that the phrase "in the business of" as used in the exclusion provision of the Eagles' liability policy applied to "permanent, ongoing liquor sales operations, rather than occasional events at which the insured may sell or serve liquor." 792 P.2d at 182–183. For that reason, the court concluded that "given a fair, reasonable and sensible construction," the policy "unambiguously excludes coverage" for the Eagles. 792 P.2d at 183.

In *Cormier v. Travelers Ins. Co.,* 618 So. 2d 1185 (La. App. 1993), the Louisiana court of appeals ruled that an American Legion post was "in the business of . . . selling . . . alcoholic beverages," as that phrase was used in the exclusion provision of a liability policy. The "obvious purpose" of the phrase, said the court, was to describe "the nature of the activity engaged in" and had "nothing to do with the specific purpose for which the activity is pursued or the nature of the person or entity engaged in the activity." *Cormier,* 618 So. 2d at 1187. Similarly the United States Tenth Circuit court of appeals, applying Oklahoma law in *Grain Dealers Mut. Ins. Co. v. Lower,* 979 F.2d 1411 (10th Cir. 1992), rejected the New Hampshire and Massachusetts cases, adopted the reasoning of *McGriff* and *Eagles,* and con-

cluded that the American Legion post was "in the business" of serving liquor for the purposes of a policy exclusion nearly identical to the one at issue here.

Thus the growing trend appears to be to examine the activities of the non-profit insured, rather than the insured's corporate status, to determine whether the insured is in the business of selling alcoholic beverages. The rationale of these cases is consistent with the principles we have established for governing interpretation of insurance policies in this state. We therefore reject the reasoning of the New Hampshire and Massachusetts courts.

B.

Interpretation of an insurance contract is controlled by the general principles of contract construction. *Lambert v. Wrensch,* 135 Wis. 2d 105, 115, 399 N.W.2d 369 (1987). The objective is to ascertain and carry out the intention of the parties. Of primary importance is that the language of an insurance policy should be interpreted to mean what a reasonable person in the position of the insured would have understood the words to mean. *Garriguenc v. Love,* 67 Wis. 2d 130, 134–35, 226 N.W.2d 414 (1975). Exclusions are to be narrowly construed against the insurer and in favor of coverage especially if they are uncertain as to effect. *Cardinal v. Leader Nat. Ins. Co.,* 166 Wis. 2d 375, 382, 480 N.W.2d 1 (1992). Any ambiguity in exclusionary clauses or exceptions is to be strictly construed against the insurer and reasonable doubts about uncertain language should be resolved against the insurer. *Patrick v. Head of the Lakes Coop. Elec. Ass'n.,* 98 Wis. 2d 66, 69, 295 N.W.2d. 205 (Ct. App. 1980). A provision in an insurance policy is ambig-

uous if, when read in context, it is "reasonably or fairly susceptible to more than one construction," *Garriguenc v. Love,* 67 Wis. 2d 130, 135, 226 N.W.2d 414 (1975).

The mere fact that a word has more than one dictionary meaning, or that the parties disagree about the meaning, does not necessarily make the word ambiguous if the court concludes that only one meaning applies in the context and comports with the parties' objectively reasonable expectations. *United States Fire Ins. Co. v. Ace Baking Co.,* 164 Wis. 2d 499, 503–04, 476 N.W.2d 280 (Ct. App. 1991). Thus it is inappropriate to create ambiguity by simply finding two different dictionary definitions of the word "business," as the New Hampshire court has done.[4] Dictionary definitions can shed only partial light on the reasonable understanding of an insured with regard to words in the context of a particular insurance policy. Rather, as the courts in

---

[4] Webster's Ninth Collegiate Dictionary offers a number of definitions of business, including "a usually commercial or mercantile activity engaged in as a means of livelihood" or also "a particular field of endeavor" or "a serious activity requiring time and effort and usually the avoidance of distractions." Black's Law Dictionary defines the word as "employment, occupation, profession, or commercial activity engaged in for gain or livelihood" or "enterprise in which person engaged shows willingness to invest time and capital on future outcome" or "that which habitually busies or occupies or engages the time, attention, labor, and effort of persons as a principal serious concern or interest or for livelihood or profit."

The word "business" connotes a purposeful, regular, organized activity involving some form of production or the provision of services to the public or other commercial enterprise. At the most general level of understanding, business means a sustained, regularly conducted activity involving products or services consumed by the public.

South Dakota, Washington, Louisiana, and the United States Tenth Circuit have done, we must examine the context in which the word "business" is used in the policy to determine what a reasonable person in the position of the insured would have understood.

The VFW and the plaintiffs argue that the overall character of the insured's organization should be the starting and ending points of the analysis of the terms of the policy. Since the VFW is a non-profit organization, they argue, none of its activities can properly be called a business. When we examine the terms of the insurance policy, the nature of the VFW's organization, and the nature of the VFW's activities, we remain unpersuaded by the VFW's argument. In the context of the policy at issue, we conclude, for the reasons set forth below, that a reasonable person in the position of the insured would have understood that the VFW was "in the business of. . .selling. . .[and] serving. . .alcoholic beverages" and therefore excluded from coverage for liability for selling to an underaged person.

First, we examine the policy. The nature and purpose of the policy as a whole bears on the expectations of the insured. The terms of VFW's insurance policy demonstrate that the non-profit nature of the insured is irrelevant for the purposes of the policy. The coverage is tied to the activities of the insured, not to its for-profit or non-profit nature.

The VFW bought a property and liability policy from Threshermen's. The two parts of the policy are entitled "Businessowners Special Property Coverage" and "Businessowners Liability Coverage." Thus the very titles of the policy envision the insured as being in a business irrespective of its status as a club and a non-profit entity.

The word "business" is used extensively throughout the policy. For example, the "Property Coverage Form" insures against direct physical loss of or damage to "business personal property" described as "property you own that is used in your business." The VFW is also insured against loss of money and securities "used in your business." The policy also insures against "lost business income" resulting from property damage, which was optional coverage the VFW apparently purchased. "Business income" is defined in this part of the policy as "net income . . . that would have been earned or incurred. . . ." The "Liability Coverage Form" protects the VFW, among other things, against "personal injury" (which includes such things as libel or slander) liability "arising out of the conduct of your business." Since the word "business" is used extensively throughout the policy, a reasonable insured in the position of the VFW would consider itself to be engaged in business for purposes of the policy. A reasonable insured would not purchase a policy which insures against loss and liability resulting from business activities unless it was engaged in business.

The policy's renewal certificate under "business description" identifies the VFW as a "club." The VFW could argue (but did not) that its business for purposes of the policy is its fraternal activities. It is clear, however, that being a club and engaging in fraternal activities does not, under the terms of the policy or under the law, preclude the club from engaging in one or more business activities. The policy's use of the word "business" seems to envision various types of club activities. Had the VFW incurred a loss of income relating to the bar activities, it would have argued, and rightly so, that the bar was a business under the policy and any loss was covered.

Furthermore, the non-profit nature of the insured is irrelevant for purposes of the policy because the policy's liability provisions are directed at the nature of the risk, not the corporate status of the insured. We agree with the court of appeals which stated in *Mattheis v. Heritage Mut. Ins. Co.,* 169 Wis. 2d 716, 723, 487 N.W.2d 52 (Ct. App. 1992), that ". . .when an insurer writes an exclusion in a liability policy it generally directs the exclusion at a risk, not a person's status." Insurance policies protect against risk. Risk results from the nature of the insured's activities, not the purposes for which the insured disburses its revenues.

In sum, to determine the meaning of "business," the relevant inquiry under the policy is the nature of the insured's activities, not the nature or mode of its organizational status. The court must determine whether the insured consistently engages in an activity which creates a level of risk which the insurer has declared unacceptable. Thus we next explore the corporate powers and the activities of the VFW.

The corporate structure of the VFW empowers it to engage in business activities and its bylaws envision a bar business. For this reason, the VFW's argument that "non-profits" cannot be considered to be engaged in business is not convincing.

The VFW is organized under state and federal law. Section 188.11, Stats. 1991–92, entitled *Corporate powers of the Veterans of Foreign Wars,* states that "any post. . .of the Veterans of Foreign Wars of the United States organized in this state pursuant to an act of the seventy-fourth Congress of the United States. . .shall have full corporate power to transact business in this state and to take over the assets and liabilities of the existing posts." The act of the 74th Congress under

which the Learman-Schaller VFW post is chartered establishes that the purposes of the VFW shall be, among other things, "fraternal, patriotic, historical, and educational" and "to preserve and strengthen comradeship among its members." Ch. 471, 49 Stat. 1390 (1936). The federal act also empowers the VFW to "hold, own, use, and dispose of such real estate, personal property, money, contract rights, and privileges as shall be deemed necessary and incidental for its corporate purposes," to "establish and maintain offices for the conduct of its business," and "generally to do any and all such acts and things as may be necessary and proper in carrying into effect the purposes of the corporation." *Id.*

In addition to the federal and state statutes, the VFW's bylaws envision the VFW as engaging in the sale of alcoholic beverages. The bylaws establish a "Bar Committee" and a "Bar Fund." The bylaws provide that all receipts from sale of merchandise and coin-operated machines are to be credited to the bar fund and used to pay for merchandise and bar supplies, bartenders' and janitors' wages, IRS and Social Security taxes, utility bills, and any mortgage on the VFW's property.

The VFW is a "non-profit" entity in the sense that it devotes any profits realized to its fraternal or charitable missions rather than distributing them to partners or shareholders. At the same time, the VFW is organized and empowered by its corporate documents to engage in a wide range of activities in order to support its missions. Under these circumstances, the VFW's reliance on a non-profit status does not prevent the conclusion that it is empowered to engage in the business of selling or serving alcoholic beverages.

A reasonable insured in the position of the VFW examining the VFW's activities would understand the

541

bar to be engaged in the business of selling or serving alcoholic beverages. The VFW generates tens of thousands of dollars each year by selling or serving alcoholic beverages and even realizes a profit in some years. For all practical purposes, the operations of the VFW's bar are identical to those of for-profit bars and taverns.

At the time of the accident, the bar was open thirty or more hours a week; it was open to the public on Thursdays, Fridays, and most Saturdays from 2:00 or 3:00 p.m. to 2:00 a.m. At the time of the accident, the VFW employed eight people in the bar including six bartenders and a bar manager. The bar generated $72,301 in gross revenues in 1990; its revenues exceeded expenses in some years but not in others. It held a state seller's permit from the Wisconsin Department of Revenue authorizing it to engage "in the business of selling tangible personal property and taxable services." It also held licenses for alcoholic beverage, cigarette, and soda water sales and for amusement devices. The VFW had been a member of the Tavern League of Wisconsin before the accident.

In addition, the VFW possessed a special tax stamp from the federal Bureau of Alcohol, Tobacco, and Firearms. It was required to pay state sales tax. It was also subject to federal income tax for any income generated by the bar. Even though it is classified as a tax exempt organization under sec. 501(c)(19) of the Internal Revenue Code, the bar's income, if any, was taxable under sec. 511 of the code as unrelated business taxable income.[5]

---

[5] 26 U.S.C. sec. 511(a) reads: (1) ". . .There is hereby imposed for each taxable year on the unrelated business taxable income (as defined in section 512) of every organization

Thus the VFW's bar, like other bars, was a regular and organized activity involving products or services consumed by the public. The VFW's bar exposes its insurer to the same risk inherent in other bars and taverns. We agree with the court of appeals that concluded that for purpose of the insurance policy, "the VFW's activities and the concomitant risk of partaking in those activities are synonymous with, if not identical to those of other bars and taverns." 175 Wis. 2d at 70.

In summary, the terms of the insurance policy, the nature of the VFW's organization, and the nature of the VFW's activities demonstrate that the policy was directed to the activities of the insured, not the insured's non-profit status. A reasonable, objective, non-profit, tax-exempt entity in the position of the VFW would have understood on the basis of the terms of the policy and the nature of the VFW's organization and activities that the VFW was "in the business of. . .selling. . .[and] serving. . .alcoholic beverages;" that the VFW would be treated as any other bar or tavern purchasing a similar policy; and that the VFW was excluded from coverage for liability for selling alcoholic beverages to an underaged person. Although the phrase "in the business of" may have several meanings, as the court of appeals wrote, only the meaning that makes no differentiation between for-profit and non-profit entities comports with the parties' objectively reasonable expectations in this case.

The plaintiffs and the VFW argue that including non-profit entities such as the VFW within the phrase "in the business of . . .selling, serving or furnishing

described paragraph (2) a tax computed as provided in section 11. . .."

alcoholic beverages" would make the word "business" irrelevant, since all entities serving alcoholic beverages would be included. However, while different types of organizations might conceivably fall within the exclusion, they would do so only if their activities constituted being "in the business." Thus, a club serving alcoholic beverages only at its annual holiday party would not likely be excluded from coverage.

The VFW and the plaintiffs also suggest that if Threshermen's had intended non-profits to fall within the exclusion, it would have used a phrase such as "regularly engaged in" rather than "in the business of." The word "regularly," however, seems to create its own set of interpretative problems. Furthermore, the word "business" carries with it a particular meaning appropriate to the language of the exclusion. In a way that other words may not, the word "business" conveys a meaning of continuous activity involving interaction with the public and the buying and selling of products or services—just the sort of activity that creates a substantial risk of liability.

For the reasons set forth we conclude that, in the context of the policy in issue and the powers and activities of the VFW, a reasonable person in the position of the insured would have understood that the VFW was "in the business of. . .selling. . .[and] serving. . .alcoholic beverages" and therefore excluded from coverage for liability for selling to an underaged person.

## III.

The plaintiffs and the VFW further assert that the liability exclusion for the business of selling alcoholic beverages is unenforceable on the grounds of public policy or equitable estoppel or because Threshermen's failed to point out the exclusion. None of these argu-

ments against Threshermen's was raised before the circuit court. They were raised in the court of appeals. The general rule is that issues not raised in the circuit court will not be considered for the first time on appeal. *Wirth v. Ehly,* 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1979). However, the rule is not absolute. Because the issues raised are questions of law which the parties have briefed and are of sufficient public interest to merit decision, we shall address them.

First, the VFW and the plaintiffs assert that the exclusion violates public policy. They argue that allowing insurers to exclude liability for businesses engaged in the sale of alcoholic beverages would close off avenues of redress for victims injured as a result of negligent sale of such beverages and would place excessive financial burdens on non-profit entities that serve alcoholic beverages.

The public policy argument of the plaintiffs and the VFW does no more than ask the court to amend this policy to provide special coverage for non-profit insureds as well as funds for those persons injured by intoxicated persons who were sold alcoholic beverages by a non-profit insured. Courts cannot strike down provisions of a contract upon this kind of justification.

Second, the VFW argues that Threshermen's should be equitably estopped from enforcing the exclusion because it engaged in misleading or deceptive conduct with regard to the type of insurance it was providing. The VFW contends that its application for liability insurance specifically stated that it was for "comprehensive general liability" insurance coverage; that the phrase "comprehensive business liability" was used on the Declaration Sheet; and that an insured operating a bar or tavern would reasonably expect that

its "comprehensive business liability policy" would cover liability for the sale of alcoholic beverages. Thus, asserts the VFW, Threshermen's use of the phrase led the VFW to believe it was insured for the sale of alcoholic beverages and the VFW relied on Threshermen's own description of the contents of the policy to its detriment.

The VFW's estoppel argument fails. It is not reasonable to assert that the mere use of the phrases "comprehensive general liability" and "comprehensive business liability" in an application or in the one-page Declaration Statement constitutes a representation upon which the VFW could have reasonably relied. Neither are such phrases misrepresentations of the contents of a lengthy printed liability coverage policy.[6] The word "comprehensive" is obviously a reference to the encyclopedic nature of the policy, rather than to a statement that the policy provides insurance protection for every eventuality. A cursory review of the liability policy evidences a detailed description of the occurrences for which coverage is provided and those for which it is not.

Finally, the VFW would have us impose upon insurers an affirmative duty to point out exclusions in their policies when those exclusions are contrary to the reasonable expectations of the insured. The VFW raised this issue in the circuit court only against the insurance agency, the Diedrich Agency. In the court of appeals and in this court it applies the argument to Threshermen's. According to the VFW, Threshermen's

---

[6] The three elements of equitable estoppel are: (1) action or inaction which induces (2) reliance by another (3) to his or her detriment. *Mercado v. Mitchell*, 83 Wis. 2d 17, 26–27, 264 N.W.2d 532 (1978).

knew that the bar operation was a significant part of the VFW's activities and thus should have known that the VFW would reasonably expect liquor liability to be covered. The VFW cites no Wisconsin case law or statute to support such a duty, only an unpublished opinion of the California Court of Appeals.[7]

In discussing the duty of the insurer, it is instructive to examine our cases interpreting the duty of an insurance agent. The cases have recognized that, absent special circumstances, an insurance agent's duty to an insured is limited. In *Nelson v. Davidson,* 155 Wis. 2d 674, 456 N.W.2d 343 (1990), the court refused to place an affirmative duty on the insurance agent to advise insureds about the availability and advisability of underinsured motorist coverage. In *Lisa's Style Shop v. Hagen Ins. Agency, Inc.,* 181 Wis. 2d 565, 511 N.W.2d 849 (1994), the court concluded that the insurance agent did not have a duty to advise the insured to increase coverage to reflect changes in her business inventory.

Adhering to the underlying premise of these cases involving insurance agents, we conclude that, absent special circumstances, an insurer has no duty to anticipate what liabilities an insured may expect a policy to cover or to identify which exclusions in a policy an insured may deem important.

The VFW does not allege any special circumstances in this case that would justify imposing a duty on Threshermen's to advise the VFW that it was not insured against liability for the sale of alcoholic bever- ·

---

[7] *Aetna Cas. & Sur. Co. v. Velasco,* 240 Cal. Rptr. 290 (Cal. App. 2 Dist. 1987).

ages to an underaged person. The VFW apparently spoke solely with representatives of the Diedrich Agency and had no direct contact with Threshermen's. Although insurance policies are not generally easy reading, the exclusion language in the VFW's liability policy is reasonably clear and concise, and the VFW does not assert that Threshermen's attempted to conceal the exclusion. Furthermore, representatives of the Diedrich Agency, in deposition testimony unchallenged by the VFW, stated that liability coverage for those in the business of selling alcoholic beverages is unavailable in standard insurance contracts and must be obtained at great expense through the secondary insurance market. They also testified that establishments selling alcoholic beverages rarely purchase such special coverage. A reasonable insured in the position of the VFW, a long time operator of a bar and a sometime member of the Tavern League, would expect to be aware of these facts. The reasonable expectation of the VFW in entering its insurance contract was that it would be treated as any other bar or tavern entering into a similar agreement.

We thus conclude that the exclusion is enforceable. It is not against public policy; Threshermen's is not equitably estopped. Threshermen's had no duty in this case to anticipate what liabilities the VFW expected a policy to cover or to identify which exclusions in the policy the VFW may have deemed important.

For the reasons set forth we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.