Gregory JOHNSON, Plaintiff-Appellant,

v.

HERITAGE MUTUAL INSURANCE COMPANY, Defendant-Respondent.

Court of Appeals

*No. 93–2947. Submitted on briefs May 31, 1994.—Decided October 5, 1994.*

(Also reported in 525 N.W.2d 85.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Patrick R. Griffin* of *Bunk, Doherty & Griffin, S.C.* of West Bend.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Arnold P. Anderson* of *Mohr, Anderson & McClurg, S.C.* of Hartford.

Before Brown, Nettesheim and Snyder, JJ.

SNYDER, J.   Gregory Johnson appeals from the trial court's grant of summary judgment in favor of

Heritage Mutual Insurance Company dismissing his personal injury lawsuit. Johnson sought to recover damages as a result of injuries suffered in an accident while riding as a passenger in an automobile owned by Heritage's insured, Central Chevrolet. The sole issue is whether the driver of the vehicle, who was test driving at the request of a potential buyer, was a "customer" of Central Chevrolet within the meaning of Central Chevrolet's garage liability policy issued by Heritage. The trial court concluded that the driver was a customer and therefore excluded from coverage under the policy. We agree and affirm.

The underlying facts of this case are undisputed. The coverage question at issue arises out of an automobile accident that occurred on February 1, 1989. Johnson suffered severe personal injuries as a result of the accident.

On the day of the accident, Johnson and two of his friends, Edward Welch and Terry Franke, went to Central Chevrolet in order to test drive some vehicles. Franke was interested in buying a car and asked Welch and Johnson to accompany him. Franke made arrangements to test drive certain vehicles, including an Oldsmobile Cutlass. He initially drove the Cutlass out of the dealership and Welch and Johnson rode along. After driving for some time, Franke requested that Welch drive the car in order to give Franke an opinion. Welch had no intention of purchasing any vehicle; he merely accompanied Franke and drove the Cutlass at his request. The accident occurred shortly thereafter while Welch was driving.

Welch had personal automobile insurance coverage at the time of the accident. Prior to filing suit against Heritage, Johnson collected $100,000 from Welch's insurer, representing the limits of that policy.

Johnson then filed suit against Heritage for damages above and beyond the amount recovered from Welch's insurer, claiming that Welch was also covered under the garage liability policy issued by Heritage to Central Chevrolet.

Heritage subsequently moved for summary judgment on the coverage issue. Heritage argued that it did not owe coverage to Johnson because the policy contained an exclusion for "customers" of Central Chevrolet and Welch was a customer. Johnson also moved for summary judgment on the coverage issue, arguing that Welch could not reasonably be considered a customer under the facts of this case and therefore the exclusion did not apply. The trial court agreed with Heritage and granted summary judgment dismissing Johnson's case.

We review determinations of summary judgment by applying the standards set forth in § 802.08, STATS., in the same manner as the trial court. *Williams v. State Farm Fire & Casualty Co.*, 180 Wis. 2d 221, 226, 509 N.W.2d 294, 296 (Ct. App. 1993). Summary judgment is appropriate only when no genuine issues of material fact exist and only questions of law are at issue. *Id.* It is undisputed that there are no material factual issues in this case. Therefore, we must determine if one party is entitled to judgment as a matter of law.

The sole legal issue to be determined is whether Welch was a customer within the meaning of the policy. This requires us to construe the insurance contract, which is a question of law that we review without deference to the trial court. *Mattheis v. Heritage Mut. Ins. Co.*, 169 Wis. 2d 716, 720, 487 N.W.2d 52, 54 (Ct. App 1992).

The Heritage policy provision at issue states in part as follows:

### 1. WHO IS AN INSURED

a.  The following are **insureds** for covered **autos**:

(1)  You for any covered **auto**.

(2)  Anyone else while using with your permission a covered **auto** you own, hire or borrow except:

. . ..

(d)  Your *customers*, if your business is shown in the Declarations as an **auto** dealership. However, if a customer of yours:

(i)  Has no other available insurance . . . they are an **insured**  but only up to the compulsory or financial responsibility law limits . . ..

(ii)  Has other available insurance . . . less than the compulsory or financial responsibility law limits . . . they are an **insured** only for the amount by which the . . . limits exceed the limits of their other insurance. [Emphasis added.]

Accordingly, because Welch's personal insurer paid its policy limits of $100,000, which exceeds the financial responsibility law limits, Welch is not covered if he is considered a "customer" under the policy.

We recently interpreted the same policy language and the meaning of the term "customer" at issue here. In *Mattheis*, Celeste Mattheis was injured when she was struck by a dealer-owned automobile driven by seventeen-year-old David Barts. Barts had taken his mother's car for repair at the dealership, as he had

done in the past, and signed a loaner car agreement in the space designated "customer." *Mattheis*, 169 Wis. 2d at 719, 487 N.W.2d at 53. In arguing for coverage under the same Heritage policy language, Mattheis claimed that because Barts's mother owned the car and paid for its servicing, she was the "customer," not Barts, and therefore the policy covered Barts. *Id.* at 722, 487 N.W.2d at 54.

We concluded that the term "customer" was not ambiguous and that the contracting parties chose the word to broadly describe a type of risk they meant to exclude. *Id.* We explained our rationale as follows:

> [W]hen an insurer writes an exclusion in a liability policy it generally directs the exclusion at a *risk*, not a person's status. The risk sought to be excluded in this case was the permissive use of garage vehicles by "customers" with their own liability insurance. The "customers" exclusion reasonably extends to whomever permissively drives the loaner if that use is consistent with the use of the vehicle being replaced.

*Id.* at 723, 487 N.W.2d at 55.

■

Applying the *Mattheis* rationale to the present case, we conclude that Welch was a customer within the meaning of the Heritage policy. It is undisputed that Franke was a customer and that he would not have been covered under the policy had he been driving the vehicle. When Welch acted to test drive the vehicle at Franke's request, he placed himself in the same position as customer Franke. Welch was driving the vehicle for the sole benefit of Franke and consistent with Franke's "test driving" use of the vehicle. Like the loaner car arrangement in *Mattheis*, Welch's test driv-

ing of the dealership car is the type of risk Heritage and Central Chevrolet sought to exclude when they wrote the contract excluding coverage to customers with other available insurance. *See id.* at 724, 487 N.W.2d at 55.

■

Johnson's central argument focuses on general principles of interpretation regarding insurance policies. Johnson agrees that the term "customer" is not ambiguous. However, he argues that even in the absence of ambiguity, coverage clauses are to be interpreted broadly so as to afford the greatest protection to the insured and exclusionary clauses are interpreted narrowly against the insurer. *See Lawver v. Boling*, 71 Wis. 2d 408, 420-21, 238 N.W.2d 514, 521 (1976). Under these rules, Johnson argues, the policy provision providing coverage to "permissive users" of covered autos[1] must be interpreted broadly to cover Welch in this case and the exclusion for customers must be interpreted narrowly against Heritage. Johnson also asserts that both the trial court in this case and this court in *Mattheis* erroneously disregarded these rules of statutory construction by broadly focusing on the risk when interpreting the term "customer." We disagree.

First, we cannot conclude that Welch was a permissive user in relationship to the dealer. Welch was

---

[1] The policy's "Wisconsin Changes Endorsement" states in part as follows:

**A. CHANGES IN LIABILITY COVERAGE**

. . ..

2. The following is added to WHO IS AN INSURED:

Anyone else is an **insured** while using a covered **auto** you own with your or any adult **family member's** permission.

driving the vehicle solely for the benefit of Franke and was, if anything, a permissive user as to the customer Franke, not the dealer. Second, under Johnson's interpretation, an insurance company would never be able to use a term in an exclusion that broadly defines a risk. This is contrary to our holding in *Mattheis*, where we concluded that the contracting parties chose the word "customer" to broadly describe a risk they meant to exclude. Further, we note that since *Mattheis*, our supreme court has expressly agreed with our analysis in *Mattheis* that "when an insurer writes an exclusion in a liability policy it generally directs the exclusion at a *risk*, not a person's status." *See Sprangers v. Greatway Ins. Co.*, 182 Wis. 2d 521, 540, 514 N.W.2d 1, 8 (1994) (quoting *Mattheis*, 169 Wis. 2d at 723, 487 N.W.2d at 55).

■

Johnson also contends that no reasonable person in Welch's position would believe that he or she was excluded from coverage under the policy because Welch had no intention of conducting business and therefore was not a customer of Central Chevrolet. However, as we pointed out in *Mattheis*, such an approach "places too great an emphasis on defining a customer as a particular person rather than as a contemplated risk." *Mattheis*, 169 Wis. 2d at 724, 487 N.W.2d at 55.

Additionally, Johnson asserts that *Potts v. Farmers Mut. Auto. Ins. Co.*, 233 Wis. 313, 289 N.W. 606 (1940), controls this case, not *Mattheis.* In *Potts*, an unidentified man borrowed a vehicle from a dealership to test drive. The man returned expressing an interest in the vehicle and the dealer allowed him to borrow the car again to pick up his wife, but the man never returned. Later it was discovered that he had been in an accident involving the plaintiff while driving the car

and had fled the scene. *Potts*, 233 Wis. at 315-16, 289 N.W. at 608. The dealership had an insurance policy which extended coverage to "customers driving the dealer's vehicles" and the plaintiff asserted that the man was a customer under the policy. The supreme court held that the driver was not a customer because he had taken the car by fraud and never intended to purchase it. *Id.* at 317, 289 N.W. at 608.

Johnson argues that in this case, like in *Potts*, the driver of the dealer's vehicle involved in the collision had no intention of purchasing the vehicle and therefore cannot be considered a customer under the policy. Johnson also contends that *Potts* is analogous because unlike *Mattheis*, there was no business relationship between the drivers of the vehicles and the dealers in this case or *Potts*. We disagree with Johnson's broad reading of *Potts*. The only proposition *Potts* stands for is that one who acquires possession of property by fraud is not a customer. *Potts*, 233 Wis. at 317, 289 N.W. at 608. Here, Welch was driving the dealer's car at the express request of Franke, who was test driving the car with the dealer's permission. We fail to see how a person in Welch's position is analogous to the thief in *Potts*.

In sum, we conclude that the rationale set forth in *Mattheis* properly extends to the circumstances in this case. The risk associated with Welch's test driving of the dealer's car is the type of risk that Heritage and Central Chevrolet sought to exclude by their use of the term "customer."

*By the Court.*—Judgment affirmed.