William HULL, Plaintiff-Respondent,

v.

HERITAGE MUTUAL INSURANCE COMPANY, Defendant-Appellant.†

Paul SCHWAI, Milwaukee Mutual Insurance Company, Wheel and Tire Shop, Inc., ABC Insurance Company, American Racing Equipment, Inc., XYZ Insurance Company and Borden, Inc., Defendants.

Court of Appeals

*No. 95–2423. Submitted on briefs June 13, 1996.—Decided July 24, 1996.*

(Also reported in 553 N.W.2d 295.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Arthur P. Simpson* of *Simpson & Deardorff* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joseph G. Doherty* of *Bunk, Doherty & Griffin, S.C.* of West Bend.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

SNYDER, J. Heritage Mutual Insurance Company appeals from a judgment which ordered the company to pay William Hull $50,000 in underinsured motorist (UIM) benefits for injuries Hull sustained when the vehicle he was driving lost a rear wheel and

overturned. Heritage contends that Hull voided his claim for UIM benefits when he settled with American Racing Equipment, Inc. (the manufacturer of the wheel) and Wheel and Tire Shop, Inc. (the retailer) without notifying Heritage. Because we conclude that under its UIM policy language Heritage has no subrogation rights against any potential tortfeasor who is not also an underinsured motorist, we affirm.

Hull was driving a vehicle owned by Paul Schwai when a rear wheel came off and the vehicle overturned, injuring Hull. Hull initially asserted claims of negligence against Schwai, alleging that the vehicle was negligently maintained; against Wheel and Tire for failure to "warn and instruct in the proper securing of the lug nuts"; and against American Racing for its failure to warn and instruct. Heritage was included in the action as Hull's UIM carrier.

Hull ultimately obtained *Pierringer* releases from American Racing and Wheel and Tire.[1] *See Pierringer v. Hoger,* 21 Wis. 2d 182, 124 N.W.2d 106 (1963). The parties dispute whether Heritage was notified of the settlements before Hull executed the releases.[2] Heritage brought a summary judgment motion, claiming that Hull's actions were contrary to the notice requirement of *Vogt v. Schroeder,* 129 Wis. 2d 3, 383 N.W.2d 876 (1986), and failed to protect the company's subrogation rights. As a consequence, Heritage refused to

---

[1] Hull executed the release of American Racing in exchange for a $2000 settlement. Wheel and Tire settled for $2500.

[2] Heritage contends that the release of American Racing occurred without the insurance company receiving prior notification; Hull claims that Heritage was notified by letter prior to his execution of the release, but that it did not respond. The timing of the release of Wheel and Tire is also contested.

pay Hull's UIM benefits. Summary judgment was denied.

After a trial, judgment was entered against Heritage, requiring the company to pay Hull the $50,000 limit of his UIM coverage.[3] Heritage appeals, renewing its argument that Hull's actions contravened the subrogation language in its policy and violated the notice requirement of *Vogt*.

■

The issue presented concerns the respective rights of an insured and insurer under a UIM provision when the insured has settled with a potential tortfeasor without involving the insurer. This is a question of law which we decide without deference to the lower court. *See Schulte v. Frazin,* 176 Wis. 2d 622, 628, 500 N.W.2d 305, 307 (1993). The application of unambiguous terms in an insurance contract to established facts presents a question of law which this court reviews de novo. *Grotelueschen v. American Family Mut. Ins. Co.,* 171 Wis. 2d 437, 447, 492 N.W.2d 131, 134 (1992).

■

It is of primary importance that an insurance contract be interpreted to mean what a reasonable person in the position of the insured would have understood it to mean. *Sprangers v. Greatway Ins. Co.,* 182 Wis. 2d 521, 536, 514 N.W.2d 1, 6 (1994). This requires that policy language be given its common and ordinary meaning. *Dailey v. Secura Ins. Co.,* 164 Wis. 2d 624, 628, 476 N.W.2d 299, 300 (Ct. App. 1991). When terms of a policy are plain on their face, the policy must not be rewritten by construction. *Schaefer v. General Casu-*

---

[3] In a stipulation prior to trial, Heritage conceded that "the damages of William Hull exceed the applicable amount of coverage from any and all sources."

*alty Co.,* 175 Wis. 2d 80, 84, 498 N.W.2d 855, 856 (Ct. App. 1993).

The policy of insurance issued to Hull included a section entitled "UNDERINSURED MOTORISTS." The provisions of this section include:

> *We* will pay damages for *bodily injury* which an *insured person* is legally entitled to recover from the owner or operator of an *underinsured motor vehicle. Bodily injury* must be caused by accident and result from the ownership, maintenance or use of the *underinsured motor vehicle.*
>
> *We* will pay under this coverage only after the limits of liability under any applicable bodily injury liability policies or bonds have been exhausted by payment of judgments or settlements.

The plain language of this section states that the policy will pay damages which the insured *is legally entitled to recover from the owner or operator of an underinsured motor vehicle.* The policy further states that this coverage will be paid *only after the limits of liability under any applicable bodily injury liability policies* have been exhausted. Looking to the plain meaning of the contract, UIM benefits cover the insured when the liability policy of the owner or operator of a motor vehicle are not adequate. The supreme court recognized this as the purpose of UIM insurance when it quoted with approval, "[U]nderinsured motorist coverage protects against the inadequately insured motorist." *Vogt,* 129 Wis. 2d at 8 n.2, 383 N.W.2d at 878 (quoted source omitted).

American Racing, a potential tortfeasor, is not the "owner or operator of an underinsured motor vehicle." Because Hull's policy states that Heritage will pay damages that its insured is legally entitled to recover

from an owner or operator of a motor vehicle, we conclude that Hull's settlement with American Racing has no effect on his allowable recovery under his UIM coverage. The policy plainly describes the yardstick for measuring the payment of UIM benefits: damages the insured is entitled to recover from an owner or operator of a motor vehicle.

Heritage maintains that this determination ignores the subrogation language included in its policy and also the clear mandate of the *Vogt* notice requirement. We address each argument in turn.

Heritage claims that the following section of its policy, entitled "GENERAL PROVISIONS," supports the contention that Hull's actions voided his right to UIM benefits:

### 6. OUR RECOVERY RIGHTS

In the event of a payment under this policy, *we* are entitled to all the rights of recovery that a person or organization to whom payment was made has against another. That person or organization must sign and deliver to *us* any legal papers relating to that recovery, do whatever else is necessary to help *us* exercise those rights and *do nothing after loss to harm **our** rights*. [Emphasis added.]

Interpretation of an insurance contract is controlled by the same principles as contract construction. *Sprangers,* 182 Wis. 2d at 536, 514 N.W.2d at 6. Any ambiguity in exceptions or exclusions is to be strictly construed against the insurer; reasonable doubts about uncertain language should be resolved against the insurer. *Id.* The intended purpose of a particular type of coverage should be considered when an insurance policy is construed. *See Vidmar v. American Family Mut. Ins. Co.,* 104 Wis. 2d 360, 370, 312 N.W.2d 129,

133 (1981), *overruled on other grounds by Welch v. State Farm Mut. Auto. Ins. Co.*, 122 Wis. 2d 172, 178-79, 361 N.W.2d 680, 683-84 (1985).

While Heritage's policy includes a general provision relating to its subrogation rights, our reading of the UIM policy provisions convinces us that the specific language of that section is controlling. When there is an apparent conflict between general and specific provisions of an agreement, the specific provision controls. *Goldmann Trust v. Goldmann,* 26 Wis. 2d 141, 148, 131 N.W.2d 902, 906 (1965).

Based on the plain language of the UIM provisions, the general subrogation language in the policy is immaterial in the instant case. The only subrogation right applicable to a payment of UIM benefits is a right of subrogation against the owner or operator of a motor vehicle. Heritage's policy affords it no right of subrogation against a nonmotorist tortfeasor when it pays its insured UIM benefits.

Heritage also contends that this determination ignores the *Vogt* requirement that an insured notify his or her insurance company before executing a release of a tortfeasor and his or her insurer. *See Vogt,* 129 Wis. 2d at 17, 383 N.W.2d at 882. Heritage complains that the lack of notice prevented it from participating in the settlement and that the release Hull signed "extinguished all subrogation rights that Heritage would have as an underinsured motorist carrier."

For the same reasons that we concluded the general subrogation clause of the policy is not controlling, the *Vogt* notice requirement is also not applicable. The *Vogt* requirement of notice does not supersede the provisions of a contract between an insurer and its

insured. Heritage's policy language abrogated its subrogation rights in this instance.

We conclude that the plain language of Heritage's UIM provisions defines its subrogation rights. Under the policy, Heritage's right exists against any tortfeasor who is also the owner or operator of a motor vehicle. Since American Racing and Wheel and Tire are neither "owners" nor "operators" of a motor vehicle, Hull's settlement with them as potential tortfeasors does not affect his right to recover under the UIM portion of his policy.

*By the Court.*—Judgment affirmed.