436 So.2d 797 (1983)
Herschel BRICKELL
v.
UNITED STATES FIRE INSURANCE COMPANY.
No. 53832.
Supreme Court of Mississippi.
August 17, 1983.
*798 Downey & Brown, John H. Downey, Jackson, for appellant.
Shell, Buford, Bufkin, Callicutt & Perry, Kenneth G. Perry, Jackson, for appellee.
Before BROOM, ROY NOBLE LEE and BOWLING, JJ.
ROY NOBLE LEE, Justice, for the court:
Herschel Brickell filed suit in the Circuit Court of the First Judicial District, Hinds County, Mississippi, Honorable Charles Barber, presiding, seeking reimbursement under an insurance policy, for expenses incurred as a result of defending a suit against him for malicious prosecution. The case was heard by the trial judge without a jury. At the conclusion of the evidence, he entered judgment in favor of United States Fire Insurance Company [U.S. Fire] and dismissed the suit with prejudice. Brickell has appealed here, assigning the following errors in the trial below:
I. The trial court erred in failing to render judgment in favor of appellant and against appellee since, under the undisputed evidence, appellant was entitled to judgment as a matter of law.
II. The court erred in excluding evidence of certain costs of defense for which Brickell sought recovery on objection that Brickell had not actually "paid" or "incurred" these expenses personally.
Brickell, president of Brickell Insurance Agency, has been engaged in the insurance business for more than twenty-eight (28) years. That business is his occupation and he has earned his livelihood from it through the years. However, on March 1, 1968, he agreed with an old friend, Bob Heberling, to enter into a venture for the sale of American Motors automobiles in Jackson, Mississippi. A corporation was organized, and he invested $25,000 in it, loaned another $25,000 on a five-year promissory note, and executed a guaranty instrument for a $25,000 loan from a Jackson bank. Heberling was supposed to be experienced in car dealership management, and was an employee of American Motors Corporation in Memphis, Tennessee, at the time of the agreement. Brickell had no experience whatsoever in that type business.
Brickell claimed that he went into the venture in order to help his friend, and that the plan was for Heberling to acquire all the stock of the dealership from its profits. The business fell upon hard times, and Heberling suggested that Brickell obtain another *799 manager. Brickell then entered into an agreement with one Alton E. McKey in September, 1969, which provided that McKey would buy Brickell's stock. The corporation's charter was amended to reflect the name McKey-McPhail, Inc. and the business operated as McKey American, Inc.
The business failed to revive, and check of the corporate books on October 31, 1972, showed a loss in excess of $200,000. Brickell took over the dealership on November 9, 1972, and immediately began to liquidate the corporation for the benefit of creditors. The final auction was held on January 10, 1973.
McKey-McPhail, Inc. bonded its employees through the Travelers' Indemnity Company [Travelers]. After the auction sale, Brickell turned over matters of the corporation to a law firm in Jackson. That law firm instituted suit against Travelers seeking a recovery for employee misconduct in the operation of the McKey-McPhail business. Suit was filed in the United States District Court for the Southern District of Mississippi, against Travelers in the name of McKey-McPhail, Inc., and Travelers entered a third-party complaint impleading practically everyone connected with the business and indebtedness of McKey-McPhail, Inc. and naming Clarence Chapman, a certified public accountant, who worked on the McKey-McPhail, Inc. books, as one of the third party defendants. McKey-McPhail then filed cross-complaints against other parties, including John Palmer and Clarence Chapman, certified public accountants. Whereupon, Chapman and Palmer filed a fourth party complaint impleading Brickell, who then filed a separate cross-complaint against Palmer and Clarence Chapman. The suit was dismissed as to all parties except McKey-McPhail and Travelers. The record indicates that Brickell, individually, never contemplated any action against Clarence Chapman until Brickell was sued in the fourth party complaint.
On July 12, 1977, Clarence Chapman filed suit in the Circuit Court of the First Judicial District of Hinds County against Travelers, McKey-McPhail, Inc., and Brickell for malicious prosecution. Brickell had an insurance policy issued by U.S. Fire with a personal catastrophe liability endorsement. Listed as "named insured" was Herschel Brickell and the policy provided coverage for "personal liability" which was defined to mean, among other things, mental anguish and mental injury, and malicious prosecution or humiliation sustained by any person. U.S. Fire was required to defend any suit against the insured alleging such injury or damage even if such suit was groundless, false or fraudulent.
Brickell called upon U.S. Fire to defend him in the suit. Eventually, the insurance company denied coverage under Exclusion (h) (business pursuits) of the policy. After much correspondence, in which Brickell insisted that he was covered by the policy, he employed a Jackson law firm to defend him in the suit, which terminated favorably to him. Brickell then called upon U.S. Fire to pay his expenses of defending the case, which request was denied. Hence this suit was filed.

I.
The lower court found that the "business pursuits" exclusion of the policy applies notwithstanding the definition of "business" in Paragraph A(e) under "CONDITIONS" of the policy which was a standard definition. The court stated that Brickell may, or may not, have entered into the business of McKey-McPhail, Inc. with the idea of financing it, but wound up the principal stockholder and did supervise, in a very limited capacity, the operation of the business. Brickell contends that the lower court erred in failing to enter judgment in his favor and against U.S. Fire since, under the undisputed evidence, Brickell was entitled to judgment as a matter of law.
The declaration stated a good cause of action against U.S. Fire and attached as Exhibit A a true copy of the policy in question. Therefore, the question to be decided by this Court, and which is dispositive of the issue, is the interpretation and construction of the insuring agreement, the *800 exclusions, and the conditions of the personal catastrophe liability endorsement, after considering the facts of the case.
The insuring agreement to "defense" provides the company shall:
(a) defend any suit against the insured alleging such injury or damage and seeking damages on account thereof, even if such suit is groundless, false or fradulent [sic]; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;
* * * * * *
(c) pay all expenses incurred by the company all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;
(d) reimburse the insured for all reasonable expenses incurred at the company's request but reimbursement for loss of earnings by the insured shall not exceed $100 per day nor an aggregate of $5000; and the amounts so incurred, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this endorsement.
The policy contains the following exclusion applicable to "Personal Catastrophe Liability Endorsement:"
(h) with respect to business pursuits or business property (other than farms) of an insured, to any claim for loss or expense for which insurance is not afforded by any underlying policy listed or insurance described in Item No. 6, but this exclusion shall not apply with respect to the ownership, maintenance or use, including loading or unloading, of any automobile, aircraft or watercraft; ...
Condition (e) of the Personal Catastrophe Liability Endorsement defines "Business" as follows: "`Business' includes trade, profession or occupation."
The policy indicates no "underlying policy" insuring Brickell against "personal liability."
The parties cite cases from other jurisdictions similar to the present case and argue that those cases sustain their respective positions. Although we have not been cited to a Mississippi case which is precisely on point with the question here, we think that established Mississippi law leads to a reasonable and just answer to the question.
Without doubt, U.S. Fire's policy obligated it to defend any suit against Brickell covering the alleged injuries here, regardless of whether the suit is groundless, false or fraudulent. The record indicates that the suit filed by Chapman against Brickell was without merit. The policy contained an exclusion "with respect to business pursuits or business property of the insured," supra. The only definition of "business" contained in the policy is "`Business' includes trade, profession or occupation." We think the term is vague and ambiguous, relative to the problem facing us. U.S. Fire drafted the policy and could have specifically defined those terms and easily could have covered the question presented to the Court. In Mavar Shrimp and Oyster Co. v. U.S.F. & G., 187 So.2d 871 (Miss. 1966), the Court said:
A study of the policy convinces us that it is ambiguous relative to this question. Since it is ambiguous, then the policy must be construed most strongly against the insurer and most favorably toward the insured. When it is so construed, we think that the fact that the Insurance Company knew that Mavar contended that Rololfich was not its employee and was fully advised that Mavar had been successful in maintaining in other cases that other persons in the same status as was Rodolfich [sic] were not its employees, obligated the Insurance Company to defend the suit. [187 So.2d at 874].
See also State Farm Mut. Auto Ins. Co. v. Taylor, 233 So.2d 805 (Miss. 1970).
In Southern Farm Ins. Co. v. Logan, 238 Miss. 580, 119 So.2d 268 (1960), the declaration *801 did not charge that Logan was an employee of the insured and there was no allegation that such relationship did in fact exist. The policy had the following exclusion: "This policy does not apply: ... to bodily injury to any employee of the insured while engaged in the employment of the insured; ... ." [238 Miss. at 587-88, 119 So.2d at 271]. The Court held that the mere fact Logan was loading milk cans on and off a truck belonging to the insured did not establish the relationship of employer and employee between the insured and Logan.
We think that Brickell's business, whether it be called trade, profession, or occupation, was that of insurance in which he had been involved for 28 years. The fact that he put up considerable money in McKey-McPhail, Inc. and was issued all the stock of the corporation in return, or as security therefor, and took over the company for liquidation purposes when it became defunct, did not exclude the coverage of the policy, the terms of which were vague and ambiguous. Therefore, the lower court erred in entering judgment for U.S. Fire.

II.
Brickell contends second that the lower court erred in excluding evidence of certain costs of defense, for which he sought recovery under the policy, on the objection that Brickell had not actually "paid" or "incurred" those expenses personally and that Brickell Insurance Company was not a party to the suit. Expenses claimed by Brickell follow:

(1) $ 13,095.00 - Attorney's Fees
(2) 525.00 - CPA Fees
(3) 1,091.00 - Deposition and Copying Expenses
(4) 5,000.00 - Lost Earnings
(5) 1,732.00 - Compensation for an employee, Tony Bernamonti,
 for work on the defense of the suit
(6) 420.80 - Xerox copies supplied by Brickell Insurance
 Company pursuant to the defense of Chapman's
 suit

U.S. Fire objected to Items 4, 5 and 6 above and had no objection to Items 1, 2 and 3. Mississippi law is settled that an insured, who must defend a suit where the insurer has declined to do so, may recover costs and attorneys' fees incurred in defending the suit himself. U.S.F. & G. v. Cook, 181 Miss. 619, 179 So. 551 (1938); Southern States Fire Ins. Co. v. Hand-Jordan Co., 112 Miss. 565, 73 So. 578 (1916). Southern Farm Ins. Co. v. Logan, supra, held that, in addition to attorneys' fees and costs, an unjustified refusal to defend is a breach of contract and renders the insurance company liable for all damages resulting from the breach. [238 Miss. at 590, 119 So.2d at 272].
The lower court permitted Brickell to make a record of Items 4, 5 and 6 above, but sustained appellee's objection and excluded the testimony. Brickell contends that he contributed considerable work to the preparation and defense of the suit against him; that, if he had not consumed such time in preparing for the defense he would have been working and earning an income in his insurance business; and that he sustained a loss of time and income as a result thereof in the sum of $5,000. The evidence as to that loss was speculative and vague and was not specific. The U.S. Fire insurance policy, Condition "C", provides that, in the event of suit in which the insurance company provides the defense, the insured shall cooperate fully with the company. We are of the opinion that the lower court was correct in excluding testimony with reference to Item 4.
As to Items 5 and 6, appellee contends that they were not paid for by Brickell but by Brickell Insurance Company and were not recoverable as damages. In United States v. Myers, 363 F.2d 615 (5th Cir.1966), the court held that the United States Government was entitled to collect attorneys' fees as an item of damages, even though United States attorneys were on the government payroll as salaried employees. The same reasoning was applied in Liberty Mutual Ins. Co. v. Atlantic Coast RR Co., 66 Ga. App. 826, 19 S.E.2d 377 (1942), where the attorneys who defended the insured were retained on an annual fee basis. The insurance company in both cases claimed that the defense of those cases actually cost the government and the insured nothing. We *802 are of the opinion that Items 5 and 6 were legitimate items of damage and were recoverable as damages under the insurance policy.
Therefore, the judgment of the lower court is reversed and rendered, and judgment is entered here for $13,095.00  attorney's fees; $525.00  CPA fees; $1,091.00  deposition and copying expenses; $1,732.00  accounting services; and $420.80  for Xerox copies, aggregating $16,863.80.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER and BROOM, P.J., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.