HRUZ, J.
¶ 1 Jeffrey Keyes appeals a judgment dismissing his third-party claims against Rural Mutual Insurance Company (Rural) and its agent, Lon Truax, Sr. Keyes asserts he is entitled to coverage for the claims of Bethany, Gunner and Emmajean Olson, all of whom were injured by Keyes's operation of a personal automobile on a public road. Keyes also appeals an order denying his motion for reconsideration. Keyes seeks coverage under a farm umbrella endorsement attached to a farmowners policy he obtained from Rural through Truax. However, the endorsement contains an exclusion that specifically precludes coverage for the off-farm use of Keyes's personal automobiles.
¶ 2 On appeal, Keyes asserts the circuit court improperly dismissed his claims for reformation of the farm umbrella endorsement and for agent negligence. He also asserts he is entitled to coverage because the umbrella endorsement is contextually ambiguous. We conclude the endorsement, and its applicable exclusion, unambiguously preclude coverage for the accident here. We also conclude Keyes's reformation and agent negligence claims were properly dismissed because no reasonable fact-finder could conclude, on this record, that Keyes asked Truax to provide him with umbrella coverage for the off-farm use of his personal automobiles. Importantly, Keyes admitted at his deposition that he made no specific request for such coverage at any time. Accordingly, we affirm.
BACKGROUND
¶ 3 The Olsons filed a complaint alleging that Keyes negligently caused their injuries resulting from an automobile collision on May 23, 2014. The accident occurred near the intersection of County Roads B and N in St. Croix County, and it involved Keyes's use of his GMC Sierra pickup truck, which he was using to tow a gooseneck trailer containing cattle.[1]
¶ 4 At the time of the accident, Keyes's personal automobiles were covered by an automobile policy issued by Wisconsin Mutual Insurance Company. Keyes also had a farmowners policy in effect with Rural that included liability and property coverage related to Keyes's family farm in Knapp, Wisconsin.[2] Further, Keyes had purchased $1 million in farm umbrella liability coverage, which was attached to the farmowners policy as endorsement FO-312. However, umbrella coverage for the off-farm use of personal automobiles was specifically excluded by form F-782, which stated:
The Farm Umbrella Liability Endorsement does not apply to personal injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile while away from premises owned by, rented to, or controlled by you. This limitation does not apply to FO-70 [an endorsement not at issue here].
All other terms of your policy remain the same.
Rural denied Keyes's claim for coverage under the farm umbrella endorsement. As justification for the denial, it cited the F-782 exclusion and the fact that the accident occurred off of Keyes's farm.
¶ 5 Keyes subsequently filed a third-party complaint against Rural and Truax seeking coverage under the farm umbrella endorsement. Keyes sought reformation of the umbrella, alleging that at the time he purchased the policy in January 2013, Truax, as Rural's agent, had assured him that "there would be coverage for the kind of claim" the Olsons asserted. Keyes alleged he was unaware that Rural would place the F-782 exclusion on his farm umbrella endorsement in the event Keyes did not purchase underlying personal automobile insurance from Rural. Keyes sought to have the endorsement reformed to delete the F-782 exclusion, and for a declaration that the Olsons' claims were covered by the umbrella endorsement. Keyes subsequently filed an amended third-party complaint that added a claim for insurance agent negligence if the umbrella was not susceptible to reformation.
¶ 6 Rural successfully moved to bifurcate the coverage issue and stay the underlying liability action until the coverage issue was resolved. Following some discovery, Rural and Truax moved for summary judgment on Keyes's claims for reformation and agent negligence. They argued the farm umbrella endorsement, as written, excluded umbrella coverage for the accident involving the Olsons. They also argued that Keyes's reformation claim failed because Keyes failed to present any evidence he had made a specific request that the farm umbrella cover the off-farm use of his personal automobiles. For similar reasons, they argued Keyes's negligence claim failed because Truax had no duty to procure such coverage.
¶ 7 The circuit court granted Rural and Truax's motion for summary judgment and dismissed Keyes's third-party claims. The court emphasized the plain language of the F-782 exclusion in concluding that the farm umbrella endorsement did not provide coverage for the Olsons' injuries. It also rejected Keyes's argument that the umbrella policy was contextually ambiguous because the F-782 exclusion conflicted with language in the "UNDERLYING INSURANCE REQUIREMENT" section of the endorsement.
¶ 8 With respect to policy reformation, the circuit court concluded it was "unable to find in the record any facts showing that Mr. Keyes had a discussion with Mr. Truax about the coverage different than that expressed in the written policy." The court acknowledged that Keyes and Truax had discussed underlying automobile coverage through Rural, but it observed that Keyes had elected to keep his automobile coverage with Wisconsin Mutual throughout 2013 and 2014 and that, during his deposition, Keyes had acknowledged he did not request umbrella coverage for off-farm automobile accidents. Finally, the court concluded Keyes's agent negligence claim was unsupported by any facts of record suggesting that Truax had failed to act with reasonable care, skill and diligence in procuring the coverage that he and Keyes had discussed.
¶ 9 Keyes filed a motion for reconsideration, reasserting his claim that the farm umbrella endorsement was "vague and ambiguous" and arguing there were genuine issues of material fact that precluded summary judgment on the reformation and agent negligence claims. Following a hearing, the circuit court denied the motion.[3] Keyes now appeals.[4]
DISCUSSION
¶ 10 Summary judgment presents a question of law that we review de novo. Fortier v. Flambeau Plastics Co. , 164 Wis. 2d 639, 651-52, 476 N.W.2d 593 (Ct. App. 1991). Summary judgment is appropriate if the record demonstrates there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT . § 802.08(2) (2015-16).[5] The summary judgment methodology is well-established, and we need not restate it here. See Tews v. NHI, LLC , 2010 WI 137, ¶ 4, 330 Wis. 2d 389, 793 N.W.2d 860.
¶ 11 Keyes presents three theories to argue he is entitled to coverage under the farm umbrella endorsement. First, he contends that because he maintained underlying automobile insurance equivalent to or better than that required in the endorsement's "UNDERLYING INSURANCE REQUIREMENT" section, he should receive the benefit of umbrella coverage. Second, Keyes asserts the farm umbrella endorsement is subject to reformation because there was a "mutual mistake" when the endorsement was issued with the F-782 exclusion, or, at a minimum, there exists a factual dispute necessitating a trial concerning whether such a mistake occurred. Finally, Keyes argues he may maintain an agent negligence claim against Truax. We reject each of these arguments.
I. Coverage by virtue of underlying insurance
¶ 12 Keyes argues the farm umbrella endorsement, by its plain terms, should be construed to afford coverage for the accident here. We interpret insurance policies with the goal of ascertaining and giving effect to the parties' intentions. Wilson Mut. Ins. Co. v. Falk , 2014 WI 136, ¶ 23, 360 Wis. 2d 67, 857 N.W.2d 156. "To that end, we interpret policy language according to its plain and ordinary meaning as understood by a reasonable person in the position of the insured." Hirschhorn v. Auto-Owners Ins. Co. , 2012 WI 20, ¶ 22, 338 Wis. 2d 761, 809 N.W.2d 529. The interpretation of an insurance policy is a question of law that we review de novo. Wilson Mut. , 360 Wis. 2d 67, ¶ 20.
¶ 13 Rural does not refute Keyes's assertion that, but for the F-782 exclusion, the farm umbrella endorsement would provide coverage for the claims at issue here. Meanwhile, Keyes does not argue the F-782 exclusion is itself ambiguous. We agree with the circuit court that any such claim would be meritless. The exclusion plainly eliminates umbrella coverage for losses arising out of the circumstances present here-that is, the operation of a personal automobile while away from the farm premises. The exclusion is unambiguous, and we apply unambiguous policy language as written. Folkman v. Quamme , 2003 WI 116, ¶ 13, 264 Wis. 2d 617, 665 N.W.2d 857.
¶ 14 Keyes nonetheless asserts coverage should be afforded because he complied with the underlying insurance requirements contained in FO-312. The farm umbrella endorsement states as follows:
UNDERLYING INSURANCE REQUIREMENT
This endorsement requires that the named insured have and maintain the types and limits of liability insurance shown on the Declarations Page. This is referred to as the Schedule of Underlying Insurance Requirement.
Failure to maintain the underlying insurance will not void this endorsement. We will only be liable to the extent that we would have been liable if the underlying policy or policies had been maintained in force as required. You must make every effort to reinstate the aggregate limits of any underlying policy that has been reduced because of the payment of a claim.
The schedule of underlying insurance on the declarations page required combined automobile liability limits of $300,000, or split limits of $100,000 bodily injury per person, $300,000 bodily injury per occurrence, and $100,000 property damage per occurrence.
¶ 15 Keyes argues that because he had Wisconsin Mutual automobile insurance that more than satisfied the Rural farm umbrella's underlying insurance requirements, he should receive the benefit of umbrella coverage through Rural.[6] As explained more fully below, it is undisputed that the F-782 exclusion was placed on Keyes's umbrella policy because he did not have underlying automobile insurance with Rural. Keyes argues that his failure to procure Rural automobile insurance constituted a "failure to maintain the underlying insurance" and, as such, the F-782 exclusion does not "void" the umbrella endorsement.
¶ 16 Although he does not explicitly denominate it as such (and his argument on this issue is less than clear), Keyes seems to be making some type of contextual ambiguity argument. Contextual ambiguity occurs when a clear and unambiguous policy provision is rendered ambiguous when considered in the context of the entire policy. Folkman , 264 Wis. 2d 617, ¶ 19. That is not the case here. As even Keyes admits, no language in the policy obligated him to place the required underlying insurance with any particular insurer, and Keyes, in fact, had auto coverage that exceeded the umbrella's underlying insurance requirement. As a result, there was not a failure to maintain underlying insurance, per the policy terms.
¶ 17 More importantly, the umbrella endorsement's underlying insurance requirement does not operate as an exception to the F-782 exclusion. Our standard methodology for insurance contract interpretation requires us to ascertain whether the policy makes an initial grant of coverage. American Family Mut. Ins. Co. v. American Girl, Inc. , 2004 WI 2, ¶ 24, 268 Wis. 2d 16, 673 N.W.2d 65. We then examine the various policy exclusions to determine if any of them preclude coverage for the claim. Id. If so, we look to see whether any exception to an applicable exclusion reinstates coverage. Id.
¶ 18 As we have explained, the F-782 exclusion unambiguously precludes coverage under the circumstances present here. The umbrella endorsement's "UNDERLYING INSURANCE REQUIREMENT" section reveals nothing suggesting it was designed as an exception to the F-782 exclusion. They are independent provisions; the F-782 exclusion operates to preclude coverage for off-farm automobile accidents without regard to whether the insured has maintained his or her required underlying coverage. The only asserted connection between the two provisions-that the F-782 exclusion was placed on the umbrella endorsement because Keyes had placed his underlying automobile coverage with another carrier-is not reflected in the policy language. On the face of the policy, then, we reject Keyes's argument that he is entitled to umbrella coverage merely because he maintained underlying automobile coverage that satisfied the umbrella's requirements.
II. Reformation of the umbrella endorsement
¶ 19 Keyes next argues the circuit court improperly granted Rural summary judgment on his policy reformation claim. This argument appears to encompass two subarguments: (1) that Keyes is entitled to summary judgment on his reformation claim as a matter of law; and (2) that, at a minimum, genuine issues of material fact exist that made summary judgment for Rural improper. We reject both subarguments.[7]
¶ 20 Reformation is an equitable remedy that exists to effectuate the parties' intentions at the time they entered into a contract. Krause v. Hartwig , 14 Wis. 2d 281, 284, 111 N.W.2d 138 (1961). "A mutual mistake made by the parties to the instrument which would defeat such intentions should be corrected in equity for the purpose of putting in effect such an intention." Id. at 284-85. An insurance policy "may be reformed because of mutual mistake when the policy does not contain the provisions intended by the parties to be included. But, the contract must be reformed to conform to some oral agreement or understanding which the written document was intended to express." Ahnapee & W. Ry. Co. v. Challoner , 34 Wis. 2d 134, 137, 148 N.W.2d 646 (1967).
¶ 21 Importantly, the mutual mistake must have existed at the time the policy was issued, and the proponent of reformation must provide clear and convincing evidence demonstrating that agreement or understanding.[8] Samuels Recycling Co. v. CNA Ins. Cos. , 223 Wis. 2d 233, 243-44, 588 N.W.2d 385 (Ct. App. 1998). Such evidence typically consists of communications or conversations between the insured and the agent that contain a request or understanding regarding the scope of desired coverage. See id. at 245-46 ; Sprangers v. Greatway Ins. Co. , 175 Wis. 2d 60, 71, 498 N.W.2d 858 (Ct. App. 1993), aff'd , 182 Wis. 2d 521, 514 N.W.2d 1 (1994).
¶ 22 Keyes argues the facts of record, and reasonable inferences from those facts, demonstrate that he sought umbrella coverage for the off-farm use of his personal automobiles, and that Truax understood him to have requested such coverage. Keyes asserts that, despite his request for this coverage, the umbrella policy was issued with the F-782 exclusion. To determine whether Keyes has demonstrated he is entitled to reformation, or whether a genuine issue of material fact exists that would preclude summary judgment for Rural, we turn to the record. In doing so, we are mindful that we must view all facts and reasonable inferences from those facts in the light most favorable to Keyes as the non-moving party. See AccuWeb, Inc. v. Foley & Lardner , 2008 WI 24, ¶ 16, 308 Wis. 2d 258, 746 N.W.2d 447.
¶ 23 Keyes testified at his deposition that both his homeowners and automobile coverage had initially been placed with Wisconsin Mutual. After one of Keyes's farm workers was injured in an accident and Wisconsin Mutual denied coverage under the homeowners policy, Keyes approached Truax about switching to Rural. Truax twice visited Keyes's farm, once in December 2012 and once in January 2013. Keyes testified he told a Rural representative, "I don't want to ever have anything like this happen again. I want coverage. I want protection."[9]
¶ 24 Keyes was then questioned about his response to an interrogatory question regarding the scope of farm umbrella coverage he and Truax had discussed. Keyes had stated in response to the interrogatory question that he had "sought full coverage, including an umbrella through Rural. He had coverage with Wisconsin Mutual previously but not with an umbrella. He intended to get umbrella coverage to cover operation of his vehicles off the premises. Mr. Truax said this could be done."
¶ 25 At his deposition, Keyes testified that, to him, "full coverage" meant that he "would be covered for anything, and -- and full coverage in my words would relate back to the lapses -- excuse me -- not lapses, but the insufficient coverage that we had with Wisconsin Mutual." Keyes stated that, to the best of his knowledge, he had told Truax he wanted to be covered for "anything and everything"; in other words, he told Truax he wanted an umbrella policy that would cover him for "any loss" that could foreseeably occur. When asked whether he had any specific discussion with Truax about the umbrella policy covering Keyes's use of his automobiles off of the farm premises, Keyes responded, "No." Keyes also testified Truax never advised him that, in order to receive umbrella coverage for his off-farm use of his personal automobiles, he would need to have underlying automobile coverage with Rural.
¶ 26 Keyes stated during his deposition that he could not recall his exact conversations with Truax. He knew only that at some point he had requested an umbrella policy from Rural and asked Truax to advise him regarding the amount of the policy limits. According to Keyes, his automobile coverage through Wisconsin Mutual had been paid through April 2013, and his intent was eventually to transfer his automobile coverage to Rural. Keyes requested a quote for automobile coverage from Truax, but it is undisputed he did not switch his coverage to Rural in the spring of 2013 or any time before the accident.[10] Keyes testified Truax advised him that the coverage could be switched to Rural once the Wisconsin Mutual termination date approached. However, Keyes never contacted Truax to request the switching of his automobile coverage to Rural, and he acknowledged he did not believe Truax could buy automobile insurance for him without his authorization. Keyes also stated that, if he had known he needed to have underlying automobile coverage through Rural to receive off-farm automobile umbrella coverage, he would have transferred all of his insurance to Rural immediately.
¶ 27 After Rural issued the farmowners policy and umbrella endorsement, Keyes could not recall ever speaking again with Truax about the policy. Keyes could not remember whether he had read the policy or whether he had reviewed the policy with Truax. Keyes acknowledged that neither the application he had signed nor the farmowners policy that was eventually issued identified automobile coverage in its summary of coverages on the declarations page. Indeed, Keyes agreed that he received the exact coverage that had been listed in his signed application.
¶ 28 Truax testified at his deposition that he is a long-time "captive agent" for Rural.[11] Truax further testified he had no memories of meeting with Keyes independent of the information in his file. His assistant, Lindsay Kurth, introduced him to Keyes, and Truax held an introductory meeting at Keyes's farm in December 2012. Truax could not recall what kind of insurance Keyes had requested or whether there was a discussion about umbrella coverage during the introductory meeting. Truax testified that he completed a standard Rural "fact-finding" form during the introductory meeting in order to send it to the underwriting department for farm coverage.
¶ 29 Truax testified he was aware that Rural could not offer umbrella coverage for automobiles unless the underlying automobile policy was also placed with Rural. However, because he could not recall any of the conversations he had with Keyes, he did not know whether he advised Keyes of this limitation. Truax acknowledged the parties had discussed switching Keyes's automobile coverage to Rural when the premium on the Wisconsin Mutual policy expired in April 2013. The farm umbrella endorsement was ultimately issued to Keyes in January 2013 with the F-782 exclusion. Again, Keyes never contacted Truax to switch his automobile carrier, including around January 2014, when the Rural policies were renewed.
¶ 30 Based on the foregoing, we agree with the circuit court that there is no genuine issue of material fact and Rural was entitled to judgment as a matter of law. The evidence, even considered in the light most favorable to Keyes, shows that his coverage request was a general one-he variously stated he wanted to be covered for "anything and everything," he wanted "full coverage," and coverage for "any loss." When asked whether he specifically requested umbrella coverage for off-farm use of his automobiles, Keyes responded that he had not. Generic requests for coverage are insufficient to trigger an obligation on the agent's part to procure a specific type of insurance or coverage for a specific risk. Williams v. State Farm Fire & Cas. Co. , 180 Wis. 2d 221, 233, 509 N.W.2d 294 (Ct. App. 1993) (holding insured's requests for "full coverage" and "no holes" coverage were insufficient to support a claim for reformation of an umbrella policy to provide coverage for a property purchased after the policy was issued); Sprangers , 175 Wis. 2d at 71-73 (holding that, where there was no discussion of liquor liability insurance at the time the business applied for insurance, coverage for such a risk could not be inferred from insured's request for "full coverage"); see also Nelson v. Davidson , 155 Wis. 2d 674, 684-85, 456 N.W.2d 343 (1990) (holding that insured's request for "the best coverage" available did not give rise to an ongoing duty on the part of the agent to advise the insured regarding coverage). Moreover, it is undisputed that Keyes did not request that any automobile coverage be placed through Rural at the time he procured the farmowners policy and the farm umbrella endorsement in January 2013.
¶ 31 Keyes argues that "[c]ases like Sprangers , Davidson , and Williams [,] where insureds are seeking to expand coverage based on general statements after a loss[,] are not on point." However, he provides no specific basis on which to distinguish these cases. Contrary to Keyes's representations, the deposition testimony here provides no evidence from which a reasonable fact-finder could conclude that the parties discussed-or that there was an understanding that Truax would procure-off-farm automobile coverage under the umbrella endorsement.
¶ 32 At best for Keyes, the evidence can be construed as showing that Keyes requested a quote for underlying automobile coverage and he and Truax had an intention to switch Keyes's Wisconsin Mutual policy to Rural after the premium ran out in April 2013. Even under those facts, an expectation that an insured will switch underlying automobile coverage does not constitute evidence from which a reasonable fact-finder could infer that the parties intended the farm umbrella endorsement to also include off-farm automobile coverage at the time the policy was procured. This is particularly true in light of Keyes's own testimony that he never specifically requested such coverage from Truax.
¶ 33 In this respect, we observe that Keyes's request for reformation depends entirely upon events that, if they were to occur at all, could only occur after the farm umbrella endorsement had been issued. Though the parties may have intended for Keyes to eventually switch his underlying automobile coverage to Rural, the undisputed facts show there was no understanding at the time the farm umbrella endorsement issued that it would provide off-farm automobile coverage. Keyes admitted he did not specifically request off-farm automobile coverage, and he agreed the umbrella as issued contained exactly the coverages he had applied for. Regardless of his expectations once he switched his underlying automobile coverage, there can be no reformation of the umbrella endorsement here because the undisputed facts demonstrate there was no mutual mistake at the time the policy issued.
¶ 34 Based upon Vandenberg v. Continental Insurance Co. , 2001 WI 85, 244 Wis. 2d 802, 628 N.W.2d 876, and Artmar, Inc. v. United Fire & Casualty Co. , 34 Wis. 2d 181, 148 N.W.2d 641 (1967), Keyes asserts that the farm umbrella endorsement is amenable to reformation even in the absence of a request for specific coverage. Those cases, however, turned on the existence of prior dealings between the agent and the insured, which dealings informed the insured's expectation of coverage. See Vandenberg , 244 Wis. 2d 802, ¶¶ 53-57 ; Artmar , 34 Wis. 2d at 190. Here, it is undisputed that Keyes and Truax did not have a long-standing insurance relationship. They had only two meetings, and nothing in the record suggests Truax had reason to believe that Keyes desired for his new farm umbrella endorsement to include off-farm automobile coverage. Keyes's bald assertion that "[t]here had to have been a discussion [at one of the meetings] ... about the umbrella coverage for vehicles off the premises" is entirely unsubstantiated.
¶ 35 Finally, Keyes posits that a genuine issue of material fact exists in this case based on certain exhibits introduced at the depositions. Specifically, Keyes observes:
• Truax answered "yes" in the farmowners policy application to the question asking whether "all underlying exposures," including automobile coverage, were underwritten by Rural;
• On the "farm fact-finding" form regarding umbrella coverage, Truax had checked the "yes" box in response to a question asking whether all drivers in the household were listed as drivers on the underlying automobile policy, and he had identified that there would be two personal automobiles covered by the umbrella;
• In a "New Business Audit Trail" document containing correspondence between Truax and a Rural representative, Truax wrote, "We will be writing the auto in April" in response to an underwriting question about adding the F-782 exclusion.
Keyes suggests these materials create a fact question about the parties' intent in January 2013, when the farmowners policy and umbrella endorsement were issued.
¶ 36 Again, the portions of the exhibits on which Keyes relies do nothing to counter Keyes's own testimony that he did not specifically request off-farm umbrella coverage for the use of his personal automobiles. Taken in the light most favorable to Keyes, these documents demonstrate the parties intended to transfer Keyes's Wisconsin Mutual automobile policy to Rural in April 2013. It is undisputed that Keyes's personal vehicles were utilized in the operation of his farm. Detailed information regarding Keyes's vehicles was included in the farm fact-finding form, but in a section that Rural only required to be completed "[i]f no Rural Auto Policy is being quoted or written with the farm." Truax's notation on the farm fact-finding form that two personal vehicles were to be covered by the farm umbrella endorsement does not constitute evidence from which a reasonable fact-finder could conclude that Keyes had requested off-premises coverage for their use in January 2013.[12]
¶ 37 Lastly, Keyes maintains that the "precision or exactitude that Rural would like is not consistent with human nature." Keyes further argues that it is unreasonable to expect him to precisely recall his conversations with Truax nearly four years after the fact. To the contrary, it is not unreasonable to expect that the insured be able to reasonably articulate to an insurance agent what coverage he or she desires, and to be able to adequately prove that such a request was made when later seeking reformation of an insurance policy. Our supreme court has recognized that, out of fairness to the insured, reformation in the insurance context is subject to a lower standard of proof than in ordinary contract disputes. Vandenburg , 244 Wis. 2d 802, ¶ 53. However, reformation should not become a vehicle by which an insurer may be bound to cover a risk that it did not contemplate and for which it received no premium. Id. The existing law strikes a fair balance between these competing principles.
¶ 38 In all, Keyes has not established a genuine issue of material fact regarding an agreement or understanding that Keyes's off-farm use of his personal automobiles would be covered by the umbrella endorsement issued in January 2013. To the contrary, the undisputed evidence, including Keyes's own testimony, shows that he never specifically requested such coverage and that he received the exact coverage for which he applied. The facts of record do not permit a reasonable fact-finder to conclude a "mutual mistake" occurred between Truax and Keyes regarding such coverage at the time the Rural umbrella endorsement was issued, as the law requires. Accordingly, the circuit court correctly concluded Rural was entitled to summary judgment on Keyes's reformation claim.
III. Agent negligence
¶ 39 Keyes next argues the circuit court improperly dismissed his negligence claim against Truax. Keyes asserts the evidence shows Truax was negligent in two respects: first, by "not getting Rural coverage for Mr. Keyes with the inception of the policy on January 23, 2013"; and, second, by failing to tell Keyes of the importance of having underlying automobile coverage with Rural. Keyes argues that, had he known that the farm umbrella endorsement would not cover the off-farm use of his personal automobiles unless he also carried underlying automobile insurance with Rural, he would have switched all coverage to Rural immediately.
¶ 40 An insurance agent has a duty to exercise reasonable skill and diligence in the transaction to which he or she is entrusted. Avery v. Diedrich , 2007 WI 80, ¶ 23, 301 Wis. 2d 693, 734 N.W.2d 159. "When an insurance agent fails to act with reasonable care, skill, and diligence in procuring coverage he or she agreed to procure, the agent has breached his or her duty to the insured." Id. Under ordinary circumstances, an insurance agent "only assumes those duties normally found in any agency relationship," including the obligation to deal with the principal in good faith and to carry out the principal's instructions. Nelson , 155 Wis. 2d at 681 (citing Hardt v. Brink , 192 F. Supp. 879, 880 (W.D. Wash. 1961) ); see also Appleton Chinese Food Serv., Inc. v. Murken Ins., Inc. , 185 Wis. 2d 791, 802, 519 N.W.2d 674 (Ct. App. 1994) (concluding an insurance agent breached the duty to act with reasonable care by failing to procure coverage she had agreed to procure for the insureds).
¶ 41 The majority rule is that an insurance agent generally does not have an affirmative duty to advise a client regarding the availability or adequacy of coverage. Nelson , 155 Wis. 2d at 682. This general rule can be defeated by a showing of "special circumstances" that give rise to something more than the standard insured-insurer relationship. Avery , 301 Wis. 2d 693, ¶¶ 26-27. "Special circumstances" can include an express agreement that an agent will advise the insured about his or her coverage, a long-standing relationship between the agent and the insured evidencing an enhanced duty, or compensation paid to the agent for his or her advice independent of remuneration by the insurer. Id. , ¶ 27; see also Nelson , 155 Wis. 2d at 683-84. "[A]n insurance agent does not have a duty to procure requested insurance coverage until there is an agreement that the agent will do so." Avery , 301 Wis. 2d 693, ¶ 29. An agent also bears no liability for failing to explain each and every exclusion to an insured absent a specific request to do so. Sprangers , 175 Wis. 2d at 73.
¶ 42 Both theories of negligence Keyes advances revolve around the underlying automobile coverage. Keyes contends Truax was negligent in not telling him to convert his Wisconsin Mutual automobile policy in January 2013, and also in failing to have the coverage written in April 2013 when the Wisconsin Mutual premium expired. He also argues Truax was negligent in failing to tell Keyes about the importance of having underlying Rural automobile coverage. Keyes asserts the circumstances here are similar to those in Poluk v. J.N. MansonAgency, Inc. , 2002 WI App 286, 258 Wis. 2d 725, 653 N.W.2d 905, wherein this court concluded that, because the insured advised the agent that a tenant was leaving the insured building, the agent had a duty to advise the insured that a vacancy clause might exempt the insured building from coverage. See id. , ¶ 14.
¶ 43 We reject Keyes's arguments. His arguments necessarily assume, contrary to the record, that Keyes specifically requested coverage for the use of his vehicles off the farm premises. As established above, Keyes admitted he did not make such a request. At most, Keyes requested from Truax a quote for the premium Rural would charge for underlying automobile coverage, if Keyes chose to purchase it. The record establishes that Keyes never affirmatively requested underlying automobile coverage from Rural after January 2013, either based off of a quote Rural provided or otherwise. Any effect on the farm umbrella endorsement stemming from Keyes's failure to immediately procure underlying automobile coverage from Rural can only be characterized as a potential gap or inadequacy of coverage.
¶ 44 Moreover, Keyes makes no attempt to demonstrate special circumstances that would abrogate the general rule that an agent has no duty to advise an insured about potential gaps in coverage. There is no evidence or argument that Truax agreed to advise Keyes regarding coverage, that Keyes paid Truax for his advice, that there was a long-standing relationship between Keyes and Truax, or that Truax marketed himself in such a way as to give Keyes the impression that he could be relied upon for advice. Truax's duties under the circumstances were those that attach to a typical agent-insured relationship, including to procure the coverage that the insured actually requests. Keyes agreed that Truax had provided all coverages identified in his signed application.
¶ 45 Keyes also relies on the opinions of his expert witness, Larry Wicks, in support of his agent negligence claim. Wicks, who had approximately forty years of experience in the insurance industry, opined that, based upon Keyes's responses to interrogatory questions, it appeared that Truax had breached the standard of care with regard to the provision of insurance services. This opinion is insufficient to create a genuine issue of material fact. First, as Rural notes, Wicks' opinion was not based on the deposition testimony. More importantly, the question of an insurance agent's duty to an insured presents an issue of law that we decide de novo. Poluk , 258 Wis. 2d 725, ¶ 13. A circuit court need not defer to an expert witness's opinion on a question of law. See Town of East Troy v. Town & Country Waste Serv., Inc. , 159 Wis. 2d 694, 707 n.7, 465 N.W.2d 510 (Ct. App. 1990). Here, there could be no duty on Truax's part to procure the umbrella coverage Keyes now seeks because, by his own admission, he did not request such coverage.
¶ 46 Based on the foregoing, no reasonable fact-finder could conclude Truax had breached the relevant standard of care. Keyes admitted he received the coverage for which he applied, despite his vague request for "full coverage." There is no evidence from which a fact-finder could reasonably infer that Keyes had specifically requested umbrella coverage for the off-farm use of his personal automobiles or that he ever requested any automobile coverage from Rural after January 2013, when the farmowners policies first issued. Accordingly, the circuit court properly dismissed Keyes's agent negligence claim.
By the Court. -Judgment and order affirmed.
Not recommended for publication in the official reports.

Keyes was apparently traveling between insured properties at the time of the accident. However, the parties do not ascribe any significance to this fact on appeal, nor to the fact that Keyes was transporting cattle. We therefore will not consider those facts in our analysis.

The parties and the circuit court all agreed that the underlying farmowners policy, unmodified by any endorsement, does not provide coverage for the Olsons' injuries. Therefore, we do not address coverage under the base farmowners policy.

The transcript of the hearing on Keyes's reconsideration motion is not in the appellate record. Although Keyes's notice of appeal purports to appeal the order denying his motion for reconsideration, he presents no developed argument specifically regarding that order. We therefore decline to separately address the motion for reconsideration. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

The circuit court accepted the parties' stipulation to stay further merits proceedings pending the outcome of this appeal. Although the Olsons are denominated as Respondents to this appeal, their arguments generally echo those of Keyes. Rural and Truax are jointly represented on appeal and have filed a single brief. Accordingly, where relevant we refer to them jointly as "Rural."

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The limits of liability for Keyes's Wisconsin Mutual automobile policy were $250,000 per person and $500,000 per occurrence for bodily injury, and $100,000 per occurrence for property damage. Keyes characterizes these limits, which were above the limits required by the farm umbrella endorsement, as "gifts" to Rural.

Keyes did not file a summary judgment motion with the circuit court. Nonetheless, his position on appeal is that he is entitled to a "finding of reformation or at least [that he has presented] a fact question on that point." Because we reject Keyes's arguments on their merits, we decide not to consider whether Keyes's request for summary judgment is procedurally proper.

Where the insured makes such a showing, even though the agent made the mistake, the insurer is liable for coverage as long as the agent was authorized to bind the insurer. Scheideler v. Smith & Assocs., Inc. , 206 Wis. 2d 480, 486, 557 N.W.2d 445 (Ct. App. 1996). "A claim for reformation is a claim against the insurer, and, once the policy is reformed, the insurer must provide coverage under the reformed policy." Id.

It is not clear whether this statement was made to Truax or to some other person who worked in Truax's agency.

It is unclear if Rural ever prepared an automobile insurance quote for Keyes. Truax testified he did not remember Keyes requesting a quote for automobile coverage, and he never prepared one. Although Keyes testified he requested such a quote, he did not produce any evidence that a quote was received. Whether such a quote was actually requested is immaterial for purposes of our analysis, as it is undisputed that Keyes did not ask to have automobile coverage placed through Rural on or before he procured the farmowners policy and the farm umbrella endorsement in January 2013. See, e.g., infra ¶ 30.

A "captive agent" is an insurance agent that sells insurance for only one company.

There is a factual dispute about whether Kurth told Keyes that the farm umbrella endorsement would not cover his use of his personal automobiles away from the farm premises unless he purchased underlying automobile coverage from Rural. Rural contends that because this factual dispute originated from an affidavit Keyes filed subsequent to his deposition, the affidavit must be disregarded as a "sham affidavit." We need not reach this issue because, even assuming Keyes is correct and Kurth did not make such a statement, Keyes's request for umbrella coverage lacked the specificity necessary to justify reformation. Thus, the factual dispute in this regard does not raise a genuine issue of material fact that would preclude summary judgment.